# HOPKINS *a.* ADAMS.

*New York Superior Court; General Term, October,* 1857.

ACTION FOR SPECIFIC PERSONAL PROPERTY.—DEATH OF DEFENDANT.—ABATEMENT.

An action for the recovery of possession of specific personal property against a sole defendant, wholly abates if the defendant dies before verdict or judgment; and the court has no power in such case to order the action to be continued against the personal representatives of defendant.

Appeal from an order at chambers denying an application for the continuance of an action against the administrators of a deceased defendant.

The facts of the case appear in the opinion of the court.

*Mr. Dyett,* for the appellant.

*Mr. Tappen,* for the respondent.

BY THE COURT*—DUER, C. J.—In this action, which is for the delivery of personal property, the defendant, before any verdict or judgment has been rendered, has died intestate, and the plaintiff has applied to the court, by a petition, for the continuance of the suit against the administrator of the deceased, as the defendant. It appears from the papers that the defendant obtained a return of the property in question by complying with the provisions of section 211 of the Code, and consequently that the plaintiff, if his application shall be denied, will lose the benefit of the security which the defendant, in order to obtain this return, was required to give.

The application has been denied by Mr. Justice Bosworth, to whom it was made, upon the ground that the court has no power to grant it; and the case is now before us upon an appeal from his decision.

The question therefore is, whether the death of a sole defendant before verdict or judgment in an action like the present, puts an end to the further prosecution of the suit, so as to impose upon the plaintiff the necessity of bringing a new action or abandoning his claim, or whether he is not entitled to have the action revived and continued against the personal representatives of the deceased. In fewer words, whether the death abates, or merely suspends, the action.

It is not denied that at common law every personal action, whether founded upon contract or upon tort, is terminated, without the possibility of its revival, by the death of a sole plaintiff or sole defendant at any time before a final judgment has been rendered. There seems to have been no exception from the rule that "*Actio personalis moritur cum persona.*" But the

* Present, Duer, C. J., and Bosworth and Woodruff, JJ.

question has been seriously contested whether the action of replevin, for which that for the claim and delivery of personal property is now substituted, was a personal action within the meaning of the rule, or a proceeding *in rem*, which never abates so long as the subject remains *in esse;* and upon this question there is a conflict in the decisions, both in England and in some of our sister States. In this State, however, it is definitively settled that replevin was as truly a personal action as trespass or trover, and, like them, was by the rule of the common law subject to abatement. Such was the decision of the Supreme Court in Webber's Executors *v.* Underhill (19 *Wend.*, 447), and of the Court of Appeals in Burke *v.* Luce (1 *Comst.*, 163).

It follows that the order denying the application of the plaintiff must be affirmed, unless it has been shown that there are statutory provisions now in force that exempt the action for the claim and delivery of personal property from the rule of the common law, and make it our duty or give us the power to grant the relief that is asked.

That there are such provisions has been earnestly contended by the counsel for the plaintiff; and he rested his argument partly upon section 121 of the Code and partly upon certain sections of the Revised Statutes, to which I shall hereafter particularly advert.

Section 121 of the Code declares that "no action shall abate by the death, or marriage, or other disability of a party, or by the transfer of any interest therein, if the cause of action survive or continue."

The effect of this provision undoubtedly is, that an action is not abated by the death of a sole defendant, if an action for the same cause may be maintained against his personal representatives, his executors, or administrators. In all such cases, it may be justly said that the cause of action survives. It may also be admitted that in an action for the delivery of personal property, the cause of action is the wrongful taking or wrongful detention of the property. Hence, if it has been proved that an action for the delivery of personal property may be maintained against an executor or administrator, founded on a wrongful taking or wrongful detention of the property by his testator or intestate, the argument for the plaintiff is complete, and instead of affirming the order from which he has appealed,

it will be our duty to reverse it, and grant him the relief he has asked.

It is not pretended that there are any provisions in the Code that either expressly, or by any reasonable intendment, have given a right to maintain such an action, for such a cause, against the personal representatives of a wrong-doer.

The question, therefore, whether such an action may be maintained, turns entirely upon those provisions in the Revised Statutes to which we were referred, and to which I shall now advert.

The 5th section of the title which treats of the " rights and liabilities of executors and administrators," declares that " any person or his personal representatives shall have actions of trespass against the executor or administrator of any testator or intestate, who in his lifetime shall have wasted, destroyed, taken, or carried away, or converted to his own use, the goods or chattels of any such person, or committed any trespass upon the real estate of any such person" (2 *Rev. Stats.*, 114, § 5).

No observations can be necessary to show that this section, standing alone, lends no support whatever to the argument for the plaintiff. The action which it gives is trespass, not replevin. It relates to an action in which damages only are recoverable, and cannot, without violence, be extended to an action in which a judgment may be rendered against the defendant personally, for the delivery of the property claimed, or its value.

But the section, it has been insisted, has been rendered not merely applicable, but controlling, by a subsequent provision in the title which contains " general provisions concerning suits and proceedings in civil cases" (2 *Rev. Stats.*, 550, § 16, 553).

The 16th section in this title gives a right to a plaintiff to bring an action on the case to recover damages for an injury to personal property in all cases in which an action of trespass for the same injury might by law be brought. It is not asserted that before the Code this section was ever construed, or could be construed, as giving a right to maintain an action of replevin against an executor or administrator for a wrongful taking or detention of personal property by his testator or intestate ; but the argument founded on the section is, that every action under the Code is essentially an action upon the case, and consequently that an action for the claim and delivery of personal

property is included, as such an action may now be brought in every case in which an action for trespass for an injury to personal property could formerly have been maintained. As trespass could then be maintained against an executor or administrator, an action for claim and delivery may now be substituted. There may be some ingenuity in the argument, but its fallacy is so apparent that we hardly think it demands a reply. An action for the claim and delivery of personal property can with no more propriety be now termed an action upon the case, than the action of replevin before the Code was enacted. It is now, as under a different name it then was, an action peculiar in its character, distinguished from all others by the mode of its commencement, the nature of the subsequent proceedings, and the form and effect of the judgment to be rendered; and to this I add, that the substituted action under section 16, is in terms limited to the recovery of damages.

The next provision in the Revised Statutes that was somewhat relied on, is found in section 2 of the title which relates exclusively to the "action of replevin" (2 *Rev. Stats.*, 522, § 2). My own conviction is, that none of the provisions in this title are now in force, for although not expressly repealed, they are, it appears to me, wholly superseded by those provisions in the Code which relate to the same action under a different name, and were plainly designed to embrace the whole subject of which they treat. The argument for the repeal of this title is exactly the same that led this court to hold, that the provisions in the Revised Statutes in relation to double costs, although not " in terms abolished, are so by a necessary implication." (Moore *v.* Westervelt, 3 *Sandf.*, 362–4.)

But waiving this objection, and admitting that the right of action that is given by the section in question has not been taken away by the Code, it remains to be seen whether this was a right of action against the personal representatives of a wrongdoer. The section declares that " whenever by any statute any executor or others, suing in the right of another, are authorized to maintain actions of trespass for any personal property *wrongfully taken*, such persons are authorized to maintain actions of replevin for such property."

We cannot see that this section at all advances the argument for the plaintiff. It is true that the action which it gives is

replevin, but the right to maintain this action is only given when there has been a "*wrongful taking*" of the property sought to be recovered. It is not given when the only *gravamen* alleged, as in the complaint before us, is a *wrongful detention*. Next, the action is given only to those who are authorized by statute to maintain an action of trespass relative to the same property; but there is no statute which authorizes the personal representatives of the injured party to maintain an action of trespass for the "*wrongful detention*" of the property; and lastly, the words of the section refer only to an action to be brought by the representatives of the injured party, and cannot by any latitude of construction be extended to an action *against the representatives of the wrong-doer*.

The last sections in the Revised Statutes to which we were referred, are sections 1 and 2 in the title "of suits against executors and administrators" (2 *Rev. Stats.*, 447, §§ 1, 2). The provisions in these sections are those upon which the counsel for the plaintiff laid the chief stress of his argument, and they are those that alone have created any hesitation, approaching to a doubt, in our own minds.

Section 1 provides that "for wrongs done to the property, rights or interests of another, for which an action might be maintained against the wrong-doer, such action may be brought by the person injured, or after his death by his executors or administrators against such wrong-doer, and after his death against his executors or administrators in the same manner and *with the like effect in all respects as actions founded upon contracts.*

Section 2 merely declares that the preceding section shall not extend to actions for slander, libel, false imprisonment, and some other actions, among which, however, replevin is not included.

The question therefore is, whether replevin is comprehended by the general words of the first section; for if so, it is certain that the action, when brought against the wrong-doer, is not abated by his death, since an action for the same wrong is given by express words against his executors and administrators. The cause of action therefore survives within the meaning of the Code.

The argument for the plaintiff is, that replevin is just as certainly an action for a wrong to property as trespass or trover,

and that there can be no distinction in this respect between re-plevin and the action which the Code has substituted for it, but which is, in reality, the same action by a different name; and the counsel cited several authorities as proving that, both by judges and text-writers, replevin has invariably been treated as an action founded upon tort; in other words, an action for a wrong.

The citation of these authorities was quite needless, for as the cause of action in replevin, and in the action substituted by the Code, is either a wrongful taking or a wrongful deten-tion of the property demanded, it is undoubtedly true that the action is for a wrong to property or the rights of its owners, but it by no means follows that it is therefore an action to which the provisions in the section we are considering, broad as they seem, were meant to apply.

An action to recover the possession of personal property, which is the true name of the action given by the Code (§ 206), is an action for a wrong, in the same, and no other, sense than an action to recover the possession of land. In each case, if the plaintiff is the true owner of the property he claims, a wrong is done to him by the defendant in withholding its possession, and it is this wrong that alone gives rise to the action; but in each case the main object of the action is the recovery of the property itself, not the recovery of damages as a compensation for the wrong which is the cause of action, that the plaintiff is bound to prove. Hence there is, in truth, no more reason for applying the provisions of the section to the action of replevin than to that of ejectment; and that they were intended to ap-ply to the latter, we cannot believe has ever been contended or supposed. Such a construction, however, can only be excluded by limiting the application of the section to actions in which the recovery of damages is the only relief that is sought; and that this limitation was intended by the Legislature, we think is made evident by the concluding words of the section, which require that the action which it authorizes shall be prosecuted " in the same manner and *with the like effect, in all respects, as actions founded upon contracts.*" The recovery in an action upon contract is only of a sum of money, and the effect of a judgment when recovered against executors or administrators is only to bind the assets of their testator or intestate in their

hands.   It therefore seems to us that the necessary effect of this provision is to confine the section to actions sounding in damages only, and in which the judgment, when recovered against an executor or administrator, is to be paid in the due course of administration, and is not a judgment binding the defendant personally, which certainly appears to be the effect of a judgment in favor of the plaintiff in replevin, and in the action substituted by the Code.   It is only by this construction that the words that the actions authorized shall be prosecuted " with the like effect *in all respects* as actions upon contracts," can be satisfied.   We add that the notes of the revisors render it certain that they meant that the section should be understood with the limitation that we adopt, since in an additional section which they proposed, but which was not enacted, for the purpose of continuing an action brought against a wrong-doer in the event of his death against his personal representatives, they, in express words, describe the action as one for the *recovery of damages.*

Other reasons might be added to justify the conclusion to which we have come, but we deem it needless to pursue the discussion.   We all concur in the opinion of the judge at chambers, that we have no power to grant the petition of the plaintiff, and the order appealed from must therefore be affirmed with costs.

---

## KORTRIGHT a. CADY.

*Supreme Court, First District ;  General Term, February,* 1857.

TENDER.—LIEN OF MORTGAGE.—TAXES.

An answer to a bill for foreclosure, which avers tender of the principal, &c., due on the mortgage, but does not allege a readiness still to pay the same,—or that it is paid into court,—nor offers to pay it into court,—is defective.

It is essential to a perfect tender that the party should not only once offer to pay the money, but that he should be always *ready* to pay it ; and unless this readiness existed, and is pleaded, the tender is a nullity and does not protect the defendant even from the payment of subsequent costs and interest.